Exhibit A



IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION-LAW

ETTINGER & ASSOCIATES, LLC,
and NEIL D. ETTINGER, ESQUIRE,                    :
                                                  :
                            Plaintiffs            :      No. *C·48·CV·2012·4598*
                                                  :
        vs.                                       :
                                                  :
THE HARTFORD/TWIN CITY FIRE                       :
INSURANCE COMPANY,                                :
                                                  :
                            Defendant             :

## NOTICE TO DEFEND AND CLAIM RIGHTS

        YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS
SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20)
DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN
APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT
YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE
WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A
JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE
FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF
REQUESTED BY THE PLAINTIFF.  YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS
IMPORTANT TO YOU.

        YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE
A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH
BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service (ARIS)
155 S. 9th Street
Easton, PA 18042
610-258-6333

ETTINGER & ASSOCIATES, LLC

By:_____
        Neil D. Ettinger, Esquire
        Attorney for Plaintiff
        Attorney ID # 75934
        1815 Schadt Avenue
        Whitehall, PA 18052

COPY

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION-LAW

ETTINGER & ASSOCIATES, LLC,
and NEIL D. ETTINGER, ESQUIRE,

          Plaintiffs

    vs.

THE HARTFORD/TWIN CITY FIRE
INSURANCE COMPANY,

          Defendant

No. C-48-CV-2012-4698

**COMPLAINT**

NOW COMES the Plaintiffs, Ettinger & Associates, LLC, a Pennsylvania Limited

Liability Company, and Neil D. Ettinger, Esquire, by and through its counsel, Ettinger &

Associates, LLC, Neil D. Ettinger, Esquire who hereby files the within Complaint and avers as

follows:

    1.    Plaintiff, Ettinger & Associates, LLC, is a Pennsylvania Limited Liability

Company with a principal place of business of 1815 Schadt Avenue, Whitehall, Lehigh County,

Pennsylvania 18052.

    2.    Plaintiff, Neil D. Ettinger, Esquire, is an attorney practicing in Pennsylvania

otherwise identified as the insured.

    3.    Upon information and belief, Defendant, The Hartford (hereinafter "Hartford") is

a Professional Liability Insurance Company licensed to issue insurance in the Commonwealth of

Pennsylvania, with a principal place of business of One Hartford Plaza, Hartford, Connecticut

06155.

4.       Upon information and belief, Twin City Fire Insurance Company is a Fire and Casualty insurance company, a subsidiary of The Hartford, with a principal place of business of One Hartford Plaza, Hartford, Connecticut 06155.

5.       Pursuant to Policy Number LT1616547 existing between the insured, Ettinger & Associates, LLC/Neil D. Ettinger, Esquire and Twin City Insurance Policy, a subsidiary of The Hartford, a liability policy for professional insurance/malpractice was issued.  Attached and incorporated herein by reference as Exhibit "A" is the Declaration page of the insurance policy.

6.       As of December 30, 2011, the insured received a notice from Ralph Bellafatto, Esquire on behalf of the insured's prior clients, Teri and Bradley Miller, the current clients of Ralph Bellafatto, Esquire (attached and incorporated herein by reference as Exhibit "B" is the correspondence dated December 30, 2011 and received by the insured on January 2, 2012).

7.       In response to said correspondence, said correspondence was immediately provided to Defendant on January 9, 2012, as required pursuant to the policy.

8.       Defendant informed Plaintiff that the December 30, 2011 correspondence attached as Exhibit "B" was received in a timely manner from Plaintiff.

9.       In response to Defendant's receipt of Exhibit "B", Defendant responded with a rejection of coverage letter as outlined on March 2, 2012 (attached and incorporated herein by reference as Exhibit "C" is the correspondence dated March 2, 2012).

10.      On or about 3/14/2012, a Complaint was filed against the insured by Ralph Bellafatto, Esquire, attached and incorporated herein by reference as Exhibit "D".

11.      In response to Exhibit "D", Plaintiff immediately provided as required under the policy the Complaint for coverage to Defendant on same date (3/14/2012).

12.     In response to Defendant's receipt of the complaint (Exhibit "D"), on said same date the insured received a phone call from Defendant specifically, Michelle C. Lareau, Esquire, agent for Defendant verbally indicating the same denial which upon information and belief, appeared without even review of the requisite Complaint.

13.     In response to Defendant's rejection received via phone on 3/14/12, the Plaintiff/Insured received a subsequent correspondence dated March 21, 2012 which outlined the concurrent rejection of coverage (attached and incorporated herein by reference as Exhibit "E" is the March 21, 2012 rejection correspondence from the within Defendant).

14.     Upon information and belief, it appears Defendant is relying on Section II, Exclusions, Paragraph 8 "Arising out of a negligent act, error, omission or personal injury occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission, or personal injury might be expected to be the basis of a claim."

15.     Defendant's justification under Section II, Exclusions Paragraph 8 is contrary to law in that, it is impossible for the insured or any insured or "any reasonable lawyer" could have perceived that as of August, 2009, at the time of the filing of the Dragonetti action by a non-client against Plaintiff/Insured and Plaintiff's client at that time, that said filing somehow triggered the insured's knowledge or that it should have been or could have been reasonably foreseen that a malpractice and/or negligent misrepresentation action could or would be filed sometime in the future (specifically in March of 2012, over three years later) based on said filing of the Dragonetti action as of 2009.

16.     Upon information and belief, upon the requisite filing as indicated by Defendant of the Dragonetti action in August, 2009, the Miller's, the then-clients of the insured, begged and

3

repeatedly required the underlying representation for the Dragonetti action, which based on said request, the insured nor could any reasonable lawyer could not have perceived the incurrence of a malpractice and/or negligent representation action based on the Millers' request for continued representation.

17.     On or about March 2012, simultaneously with the filing of the requisite malpractice complaint, Attorney Ralph Bellafatto additionally filed in the continuing Dragonetti action (previously filed August, 2009), a cross-claim against Plaintiff/Insured.  Attached and incorporated herein by reference as Exhibit "F" is the cross-complaint filed by Ralph Bellafatto, Esquire.

18.     At all times relevant, the Defendant has denied coverage for any of the alleged malpractice/negligent representation both in the Dragonetti action filed in August, 2009, as well as the malpractice action filed as of March, 2012.

19.     Upon information and belief, Defendant intentionally with reckless disregard of the contract between Plaintiff and Defendant, has failed to properly advise Plaintiff and defend the within matter as Plaintiff's insurance carrier as required by the policy between Plaintiff and Defendant.

20.     Defendant's wrongful and erroneous rejection of coverage pursuant to policy between Plaintiff and Defendant lacked a reasonable basis for said denying of Plaintiff's benefits under the policy.

21.     Defendant knew or should have known at the time of the wrongful rejection of coverage in denying Plaintiff's benefits under the policy that Defendant lacked a reasonable basis for said denial, despite Plaintiff's numerous attempts to insure Plaintiff's benefits under the policy.

22.     Given Defendant's wrongful rejection, Plaintiffs have been forced to defend the Complaint and Cross claim incurring cost and expenses in said defense.

## COUNT I - ACTION FOR DECLARATORY JUDGMENT

23.     Plaintiff incorporates, by reference thereto, those averments contained in the previous paragraphs 1-22 of this Complaint as if set forth herein at length.

24.     Plaintiff is, per contract, insured with Defendant and was, at all times relevant, insured under said contract pursuant to premiums paid by Plaintiff to Defendant for liability professional insurance/malpractice coverage.

25.     Pursuant to said contract for insurance between Plaintiff and Defendant and the issuance of said contract and paid premiums by Plaintiff in exchange for coverage under the Insurance coverage for malpractice as covered under the insurance policy, Plaintiff's policy and requisite claims for insurance coverage which have been rejected should be covered by Defendant under the policy.

26.     Upon information and belief, Defendant intentionally with reckless disregard of the contract between Plaintiff and Defendant, has failed to properly advise Plaintiff and defend the within matter as Defendant's insurance carrier as required by the policy between Plaintiff and Defendant.

27.     Defendant's wrongful and erroneous rejection of coverage pursuant to policy between Plaintiff and Defendant lacked a reasonable basis for said denying of Plaintiff's benefits under the policy.

28.     Defendant knew or should have known at the time of the wrongful rejection of coverage in denying Plaintiff's benefits under the policy that Defendant lacked a reasonable

basis for said denial, despite Plaintiff's numerous attempts to insure Plaintiff's benefits under the policy to Defendant.

29.     Pursuant to 42 Pa. C.S.A. § 7541, a Declaratory Judgment shall be issued indicating that Plaintiff is insured under the requisite policy of insurance with Defendant and it is Defendant's obligation and duty to provide coverage and indemnify for said claims or allegations as previously were erroneously rejected under said coverage, including defense and indemnification.

WHEREFORE, Plaintiff requests the Court to enter judgment:

A.     Declaring that Defendant has a duty and obligation to provide coverage including defense and indemnification per the requisite insurance coverage which is covered under the policy of insurance between Plaintiff and Defendant, for which Plaintiff is insured under said policy;

B.     Declaring that any and all of the wrongfully rejected coverage for Plaintiff which is insured under the policy must be paid plus any and all claims and/or indemnification owed under the policy including all alleged damages (including but not, limited to Plaintiffs' damages incurred as a result of Defendant's wrongful sand erroneous rejection of coverage) as well damages as alleged/outlined in the within Complaint;

C.     Declaring that any and all such further relief as the Court may deem appropriate.

## COUNT II – BAD FAITH

30.     Plaintiff incorporates, by reference thereto, those averments contained in the previous paragraphs 1-29 of this Complaint as if set forth herein at length.

31.     The Defendant or through their agents and representatives, including counsel, acted in bad faith toward the Plaintiff in violation of 42 Pa. C.S.A. § 8371 as follows:

6

    (a)     In unreasonably delaying resolution of Plaintiff's claim for insurance coverage as set forth in the submission(s) as required under the policy;

    (b)     In taking unreasonable and frivolous positions regarding Plaintiff's claims for coverage and payment pursuant to submissions;

    (c)     In denying Plaintiffs claims for coverage without reasonable basis;

    (d)     In denying Plaintiff's claims for coverage with knowledge that they did not have a reasonable basis to do so;

    (e)     In arbitrarily denying Plaintiff's claim that despite the language of the policy, Defendant lacks justification for claiming the submission was not brought within the statute;

    (f)     In failing to adequately investigate Plaintiff's claims for coverage and payment;

    (g)     In failing to pay Plaintiff's claims when it became clear that the benefits were due;

    (h)     In ignoring evidence substantiating claims;

    (i)     In elevating their own interests above those of their insured;

    (j)     In engaging in a pattern of conduct, as described more fully in the preceding paragraphs, designed to deprive their insured of benefits under a policy of insurance;

    (k)     In committing violations of the Pennsylvania Unfair Insurance Practices Act; and

    (l)     In compelling Plaintiffs to initiate litigation in order to recover benefits that were due.

32.     Based upon the Defendant's conduct, as previously described herein, Plaintiff is entitled to the following damages, claim for which is made: Interest on the amount of the claim from the date the clam was made in an amount equal to the prime rate plus three percent; Punitive damages; Costs; and Attorneys' fees.

33.     Defendant's conduct and wrongful rejection of coverage under the policy between Plaintiffs and Defendant constitutes extreme and outrageous conduct for which Plaintiffs are entitled to punitive damages as well as other damages as authorized pursuant to 42 Pa C.S.A. 8371.

WHEREFORE, Plaintiff asks that judgment be entered in its favor and against Defendant in an amount in excess of Fifty Thousand ($50,000.00) Dollars, together with costs, interest, attorneys' fees and punitive damages.

Respectfully submitted,

ETTINGER & ASSOCIATES, LLC

By:_____

Neil D. Ettinger, Esquire
Attorney I.D.#75934
Peachtree Office Plaza
1815 Schadt Avenue
Whitehall, PA 18052
610-439-3881

*Attorney for Plaintiff*

## VERIFICATION

I, Neil D. Ettinger, Esquire, state that I am the Member/Manager of Ettinger & Associates, LLC, that I am authorized to make this verification on its behalf and that the facts set forth in the foregoing document are true upon my personal knowledge, information and belief.

I understand that my statements are made subject to 18 Pa. C.S.A. 4904 providing for criminal penalties for unsworn falsification to authorities.

Ettinger & Associates, LLC

By:_____

Neil D. Ettinger, Esquire, Mbr./Mgr.


## VERIFICATION

I, Neil D. Ettinger, Esquire, hereby verify that the facts set forth in the foregoing document are true and correct to the best of my knowledge, information and belief.   I understand that any false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

_____

Neil D. Ettinger, Esquire

**EXHIBIT "A"**

Name of Insurer: Twin City Fire Insurance Company          Indianapolis, IN

THE
HARTFORD

## LAWYERS' PROFESSIONAL LIABILITY POLICY

THIS IS A CLAIMS MADE AND REPORTED POLICY. PLEASE READ IT CAREFULLY. COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD AND REPORTED IN WRITING TO THE COMPANY IMMEDIATELY BUT IN NO EVENT LATER THAN SIXTY (60) CALENDAR DAYS AFTER THE EXPIRATION DATE OF THE POLICY PERIOD OR APPLICABLE EXTENDED REPORTING PERIOD. THE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS CLAIMS EXPENSES. THE DEDUCTIBLE IS APPLICABLE TO CLAIMS EXPENSES AND DAMAGES. PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT, BROKER, OR REPRESENTATIVE.

POLICY NUMBER: LT 1616547

PRODUCER:     Target Underwriting Management Co.
              10 Tower Lane
              Avon, CT 06001

SERVICE OFFICE:   Target Insurance Services
                  40 Shuman Boulevard, Suite 330
                  Naperville, IL 60563

RENEWAL OF: LT 1616547

### DECLARATIONS

ITEM # 1.    NAMED INSURED AND MAILING ADDRESS:

Law Offices of Ettinger & Associates, LLC

1815 Schadt Ave.
Peachtree Office Plaza
Whitehall, PA 18052-

ITEM # 2.    POLICY PERIOD EFFECTIVE DATES:     FROM: 07/01/2011 TO: 07/01/2012
             (12:01 A.M. standard time at the address shown in Item #1.)

ITEM # 3.    RETROACTIVE DATE: 07/01/2007

ITEM # 4.    LIMITS OF LIABILITY:

             LIMIT OF LIABILITY EACH CLAIM
             AGGREGATE LIMITS OF LIABILITY                    ████████████

ITEM # 5.    DEDUCTIBLE:

             DEDUCTIBLE EACH CLAIM
             AGGREGATE DEDUCTIBLE                             ████████

ITEM # 6.    PREMIUM PER POLICY PERIOD:       ████████

             If applicable   {   State Surcharge:

ITEM # 7.    ENDORSEMENTS: (See attachments.)

_Authorized Representative_

June 24, 2011
Date

LP 00 H052 00 0205          © 2005, The Hartford                    Page 1 of 1

**EXHIBIT "B"**



BELLAFATTO
LAW OFFICE

RALPH J. BELLAFATTO · RALPH@BELLAFATTO.COM

December 30, 2011

Neil D. Ettinger, Esquire
Ettinger & Associates, LLC
1815 Schadt Ave.
Whitehall, Pa. 18052

     Re: Brad and Teri Miller

Dear Mr. Ettinger:

    Brad and Teri Miller consulted with me this past week regarding your representation of them since 2004 in connection with the Miller v. Gundrum claim ("the underlying action"), and the subsequent action brought by Messrs. Hacker and Gundrum against the Millers, yourself, and your law firm ("the Dragonetti action"). As a result of that discussion, I am writing to advise that your representation of them is immediately terminated. I have instructed them to make no further payments on any of your bills which are disputed. Any settlement authority which they previously gave is withdrawn.

    I request a complete copy of your file, including every document and communication regarding this matter, including any such documents or communications in digital form. This specifically includes any and all email between yourself, or anyone else in your office, with any other attorney or person, and intra-office email communications. Although I have reviewed a substantial number of documents in connection with both the underlying and Dragonetti actions, the Millers' file is not complete by any means. I will need copy of all depositions (I have only Teri's), particularly your own, as well as any written discovery responses you provided on your own behalf, and Rich Pepper's expert report. I will also need copies of any pretrial motions which you have prepared or filed on behalf of the Defendants which I understand are now due. I will also need copies of any and all fee agreements or fee letters between yourself and the Millers in connection with both the underlying and Dragonetti actions.

Also, please accept this correspondence as notice of the Millers' claims against you and your law firm. Pending a complete review of your file, these claims are likely to include:

- Professional negligence in connection with your initial and ongoing advice in the underlying action, resulting in potential Dragonetti Act liability.

- Professional negligence in connection with your defense of the Dragonetti action to this point.

- Claims for breach of fiduciary responsibility arising from your defense of the Millers in connection with the Dragonetti action.

- Claims for reimbursement of excessive and fraudulent billings.

- Crossclaims for indemnification on the pending Dragonetti action.

You can anticipate that damages for the claims asserted will include a request for disgorgement of all legal fees paid to you to date since the inception of the underlying action in 2004, which total in excess of $51,000, my legal fees associated with the anticipated defense of the Dragonetti action, and punitive damages. Axcan v. Reed Smith, LLP, 2007 Phila. Ct. Com. Pl. LEXIS 78 (2007); Tower Investments, Inc., Liberty Homes Philadelphia, Inc., and Bart Blatstein v. Rawle & Henderson, LLP, 2008 Phila. Ct. Com. Pl. LEXIS 62; 2 Pa. D. & C.5th 537(2008); Airgas, Inc. v. Cravath, Swaine & Moore, LLP, 2010 U.S. Dist. LEXIS 78162 (E.D. Pa 2010).

After reviewing the matter with the Millers in great detail, I believe that you provided flawed legal advice in support of potential claims against the Remax realtors. While I can certainly understand the Millers' frustrations over the real estate purchase and subsequent subdivision of the adjoining parcel, I cannot comprehend how you advised that they had a viable cause of action against the realtors for essentially the same reasons set forth in the opinions of Judges Moran and Baratta on the Summary Judgment Motions which ultimately disposed of the underlying case. Beyond that, I don't believe that there is any question that your joint defense of the Millers and yourself in connection with the Dragonetti action is violative of the Rules of Professional Conduct, particularly Rule 1.7 pertaining to conflicts of interest. This is not simply a disciplinary violation, but also a violation of the substantive obligations of attorneys to refrain from conflicts of interest, which gives rise to their claims for breach of fiduciary responsibility under Pennsylvania common law. Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz, 529 Pa. 241, 602 A.2d 1277, 1284 (Pa. 1992); Milgrub v Continental Casualty, 2007 U.S. Dist. LEXIS 80(E.D. Pa 2007). I also believe that the Millers are entitled to a 100% indemnification from you in connection with the pending Dragonetti action, and they will be making no offers of settlement for this reason. See 42 Pa. C.S. Section 8352(2).

-2-

It is also my understanding that you have not put your own professional liability carrier on notice of the Dragonetti action. I would respectfully suggest that you reconsider that decision. The delay in reporting the claim may have already placed your coverage in jeopardy. Regardless, you are now on notice of new claims which should be timely reported within this claims made policy period.

I will need some additional time to receive and absorb your file before I will enter my appearance formally of record. My entry of appearance will coincide with motions to file amended pleadings, including the aforementioned crossclaims against you. As my secretary is on vacation next week, none of that will be accomplished before the week of January 9. I have already notified Steve Molder that he will not be responsible for defending the Millers in connection with the Dragonetti action henceforth. It is my understanding that he has had no substantiative discussions with the Millers, and therefore, I have no objection to his continuing to represent your interests, unless I receive information indicating otherwise. (If you are not aware, Steve is rather ill and in the hospital, and I was not able to speak to him directly.)

The brief delay before I formally enter my appearance does provide a small window of opportunity to perhaps resolve all matters globally before they escalate further, and before Mr. Karoly becomes aware of this very significant development. I would anticipate that his settlement position will harden once my appearance is entered, and he realizes that the defense is no longer unified. With a view to achieving precisely that, the Millers have authorized me to extend this offer of settlement which is being tendered pursuant to Pennsylvania Rule of Evidence 408. The Millers will release you and your law firm from any and all claims and further liability if:

1. You contact Mr. Karoly on behalf of the Plaintiffs in the Dragonetti case and settle it entirely at your expense. The Millers will have to receive a general release of all claims from all Plaintiffs and all other Defendants.

2. You reimburse the Millers $2,000 in partial reimbursement of attorney's fees to date, which include fees incurred for my initial consultation and evaluation.

3. All of the above to be accomplished in principle no later than close of business on January 6, 2012.

This offer of settlement will expire on its own terms after close of business next Friday, January 6, 2012, and will not be reinstated thereafter. This offer reflects the Millers' desire to put this unfortunate episode to an end and not my views of the legal merits or total damages which they have sustained. Given that you have already billed and received in excess of $51,000 from the Millers since 2004 in connection with these claims, all of which is subject to disgorgement, I believe this to be a very generous offer and one that you should seriously consider.

I regret that my first professional contact with you is of this nature.  I will be available to discuss this matter with you next week if you so desire.

Very truly yours,

RALPH J. BELLAFATTO, P.C.

By_____
Ralph J. Bellafatto

RJB:db
cc: Steve Molder, Esq.
    Mr. & Mrs. Miller

**EXHIBIT "C"**

Michele C. Lareau, Esq.
Claims Consultant
Hartford Financial Products
Lawyers Professional Liability
277 Park Avenue, 16th Floor
New York, NY 10172
Tel. (212) 277-0858
Fax. (917) 464-6812
Email: michele.lareau@thehartford.com



THE
HARTFORD

March 2, 2012

**VIA EMAIL:NETTIGNER@ETTINGERLAW.NET**

Law Offices of Ettinger & Associates
1815 Schadt Avenue
Whitehall, PA 18052

Re:   Policyholder:   Law Offices of Ettinger & Associates
      Matter:  Brad and Teri Miller
      Insurer:  Twin City Fire Insurance Co.
      Policy Number: LT 1616547
      Our Reference Number:  12395332

Dear Mr. Ettinger:

This is to acknowledge receipt of your submission on January 12, 2012. This letter also memorializes our conversation on January 18, 2012, during which we indicated, for the reasons summarized below, that Twin City is compelled to disclaim coverage for this loss.

Subject to the terms and conditions, the Twin City Fire Insurance Policy LT 1616547 provides coverage for any act, error or omission arising out of the insured performing or failing to perform professional services for others committed or alleged to have been committed prior to the end of the Policy Period, but after the Retroactive date. The Retroactive date is July 1, 2007. The applicable Policy Period for this claim is from July 1, 2011 through July 1, 2012. The Limits of Liability are $1,000,000 per claim and $1,000,000 in the aggregate, subject to a $2,500 claim deductible. Please note that the recitation of this policy information is in no way meant to imply that there is coverage for this Claim.

By commenting on coverage for this Claim, we do not mean to suggest that any of the allegations, which are completely unsubstantiated, have any merit. This matter arises out of your representation of the claimants/buyers in a lawsuit pertaining to the sale of land. You filed a complaint on October 13, 2005 on behalf of the claimants seeking damages in part for breach of contract and alleged misrepresentations and fraudulent statements on the part of the defendants/sellers. On May 28, 2009, the Court granted the

defendant's motion for summary judgment and dismissed the matter finding that the causes of actions pled against the defendants were not viable causes of action.

On August 27, 2009, a "Dragonetti" Complaint was filed against you and the claimants by the defendants in the 2005 matter. You entered an appearance and began defending the claimants and yourself in that matter. On December 30, 2011, claimants' current counsel notified you via letter that your representation of the claimants in the 2009 Dragonetti matter was terminated and a copy of the claimants' file was requested. Claimants' counsel advised you in that letter that the claimants would be filing a claim against you for legal malpractice relating to your representation of the claimants in the 2005 matter and in the 2009 Dragonetti matter. The claimants indicated that they will be seeking compensatory damages; reimbursement of excessive fees from fraudulent billing; indemnification from any Dragonetti Act liability and punitive damages. On January 23, 2012, a Praecipe for Summons was filed by claimant's counsel. Based upon all of the above, we regret to advise you that no coverage is afforded for this matter.

Please note that Section II 8 of the Policy excludes coverage for any claims that could have been reasonably foreseen, prior to the inception date of the policy. Section II: Exclusions subsection 8 of the subject policy provides in relevant part:

**SECTION II: EXCLUSIONS**
**EXCLUSIONS -**

This insurance does not apply to claims:

             *                        *                       *

8. Arising out of a negligent act, error, omission or **personal injury** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a claim.

Based on your knowledge in August 2009 that a Complaint had been filed against you and claimants arising out of your representation of the claimants in some underlying litigation, it appears that you could have reasonably foreseen that the current matter being reported might be expected to be the basis of a Claim prior to the Policy's inception of July 1, 2011. In this case, you were on notice of the allegations contained in the Complaint in August 2009. You knew that your clients were defendants in a Dragonetti action based on your underlying representation – thus incurring costs, fees and/or a potential exposure in that litigation. You knew that the insureds were also named in that action. A reasonable lawyer in that situation would have been

on notice that its acts errors or omissions in prosecuting the underlying 2005 litigation could be the basis of a claim.

It appears the allegations of the underlying Dragonetti complaint were a claim against the insureds in 2009 which should have been reported in 2009 to your malpractice carrier at that time. As this subsequent lawsuit by your clients relates back to that same underlying representation, this is all one related claim. With that in mind, we refer you to Section I D: **LIMITS OF LIABILITY AND DEDUCTIBLE** which provides in relevant part:

Limits of Liability:

               *             *             *

a. All **claims** arising out of the same or related negligent acts, errors, omissions or personal injury will be deemed to have been made when the first of such **claims** is made whether such demands are made against one or more **insureds** or whether such demands are made by one or more person and will be treated as a single **claim**.

The Praecipe for Summons (and allegations as set forth in claimants' lawyer's notice letter) and the 2009 Dragonetti Complaint arise out of the same alleged negligent acts and would be treated as a single claim pursuant to the aforementioned policy provision. On the above bases, Twin City denies any obligation to defend or indemnify the insureds in this matter.

Notwithstanding the above denial of coverage, Twin City draws your attention to the Policy Section 1, B. Definitions, which provides in relevant part:

**DEFINITIONS**

               *             *             *

4. **Damages** means a monetary judgment, final arbitration award, or settlement but does not include:

Damages does not include:

a. Any fines, sanctions or penalties, or punitive or exemplary damages; or

b. Restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an **insured** for **professional legal services**; or

               *             *             *

Based upon the foregoing, Twin City would not be responsible for the defense or any payment related to punitive damages or the return of legal fees if coverage were otherwise found to exist.

Next, Twin City draws your attention to Section II: Exclusions, which provides in relevant part:

**EXCLUSIONS**

This insurance does not apply to claims:

1. Arising out of any dishonest, fraudulent, criminal or malicious act, error omission, or **personal injury** committed by at the direction or with the knowledge of an **insured**. This exclusion does not apply to an **insured** who did not personally commit or personally participate in committing any of the knowingly wrongful acts, error, omissions or **personal injury**.

Based upon the foregoing, Twin City will not be responsible for the defense or any payment arising out of any act, error or omission committed by you with actual dishonest, fraudulent, criminal or malicious purpose or intent if coverage were otherwise found to exist.

In light of this coverage denial, Twin City will not provide you or any insured with a defense or indemnity to this matter.   Of course, if you have any additional information you believe should be factored into our analysis of coverage above, please feel free to provide us with such information and we will gladly review it for its impact on coverage. Twin City reserves the right to supplement any grounds for reserving its rights or denying coverage under the referenced policy should any grounds appear hereafter. This letter does not constitute, nor should it be construed by you as a waiver of any terms, and/or condition of the policy or Twin City's rights hereunder, all of which continue in full force and effect.

Very Truly Yours,

Michele Lareau

Michele Lareau

**EXHIBIT "D"**

MAR 1 4 2012

 **BELLAFATTO**
LAW OFFICE

RALPH J. BELLAFATTO · RALPH@BELLAFATTO.COM

March 13, 2012

Neil D. Ettinger, Esquire
Ettinger & Associates, LLC
1815 Schadt Ave.
Whitehall, Pa. 18052

Re: Miller v. Ettinger - No. C-48-CV-2012-644

Dear Mr. Ettinger:

Enclosed please find a copy of the Complaint being filed this date.

Very truly yours,

RALPH J. BELLAFATTO, P.C.

By _____
Ralph J. Bellafatto

RJB/ms
cc: Steve Molder, Esquire

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

BRADLEY MILLER          :          NO. C-48-CV-2012-644
TERI MILLER             :
                        :          JURY TRIAL DEMANDED
vs.                     :
                        :
NEIL D. ETTINGER, ESQUIRE   :
ETTINGER & ASSOCIATES, LLC  :

## N O T I C E

    You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Crossclaim or for any other claim or relief requested by the Defendant(s). You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYER REFERRAL SERVICE
155 SOUTH NINTH STREET
EASTON, PENNSYLVANIA 18042
TELEPHONE: (610) 258-6333

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

BRADLEY MILLER             :     NO.  C-48-CV-2012-644
TERI MILLER                :
                           :     JURY TRIAL DEMANDED
vs.                        :
                           :
NEIL D. ETTINGER, ESQUIRE  :
ETTINGER & ASSOCIATES, LLC :

## COMPLAINT

AND NOW COME Plaintiffs, Bradley Miller and Teri Miller, by and through their

attorney, Ralph J. Bellafatto, with this Complaint of which the following is a more complete

statement.

1. Plaintiffs Bradley and Teri Miller are adult individuals, husband and wife, residing at

1350 Box Elder Road, Danielsville, Pennsylvania 18038.

2. Defendant Neil D. Ettinger, Esquire (hereinafter "Ettinger") is an adult individual

who, at all relevant times hereto, was an attorney licensed to practice in the Commonwealth of

Pennsylvania, with a present principal place of business at 1815 Schadt Ave., Whitehall,

Pennsylvania 18052, and is, upon information and belief, the President of Ettinger & Associates,

LLC.

3. Defendant Ettinger & Associates, LLC (hereinafter "the law firm") is a limited

liability corporation with its present principal place of business at 1815 Schadt Ave., Whitehall,

Pennsylvania 18052, and is engaged in the practice of law in the Commonwealth of

Pennsylvania.

4. At all times material hereto Ettinger acted as the agent, servant, and/or employee of

the law firm such that the law firm is vicariously liable for Ettinger's negligent acts and

omissions.

5. In 2005 the Millers consulted with Ettinger concerning their dissatisfaction with the services of a realtor in connection with the purchase of real estate earlier that year. Specifically, the Millers inquired as to whether they had a legal basis to seek redress and compensation for perceived misrepresentations relating to the subdividability of an adjoining lot and his responsibilities as their realtor in connection with the underlying real estate transaction.

6. The Millers provided accurate and truthful information to Ettinger who subsequently advised that they had viable claims to assert against Gundrum which could and should be pursued.

7. The Millers relied upon Ettinger's advice in deciding to initiate the underlying civil proceedings, and as a result, on or about June 8, 2005, the Millers filed suit against Norman H. Gundrum and Martin J. Hacker, d/b/a ReMax Unlimited Real Estate (hereinafter "the ReMax Defendants") at Northampton County C.C.P. No. C48CV-2005-3905 (hereinafter "the underlying case").

8. Thereafter, the ReMax Defendants repeatedly asserted that the underlying case was frivolous and demanded that the claims be withdrawn.

9. On each occasion that the ReMax Defendants made such demands, the Millers consulted with Ettinger as to whether the underlying case should be withdrawn or continued, and followed Ettinger's advice to continue the underlying case to conclusion.

10. The underlying case was terminated entirely in favor of the ReMax Defendants as a result of serial Motions for Summary Judgment and Court Orders of April 24, 2008 and May 28, 2009.

11. Ettinger billed for fees and costs in the underlying case in the amount of $21,159.81.

12. Thereafter, the ReMax Defendants filed suit against the Millers and the Ettinger Defendants alleging wrongful abuse of civil proceedings (hereinafter "the Dragonetti action"). The gravamen of the Dragonetti action asserted that the underlying case was legally frivolous.

13. Following the disposition of the underlying case and the initiation of the Dragonetti action, Ettinger advised the Millers that there was no conflict of interest for him to represent them jointly in defending the instant action, along with defending himself and his law firm.

14. At no time did Ettinger advise the Millers of their right to file a Crossclaim against him for reliance upon his advice in connection with the underlying case.

15. Ettinger affirmatively represented that their was no conflict of interest for him to assert a common defense against the ReMax Defendants.

16. The Millers relied upon Ettinger's advice in allowing him to represent their interests in defending the Dragonetti action until December 30, 2011 when, after consultation with other attorneys, the Millers discharged Ettinger from further representation.

17. From the outset of the Dragonetti action through December 30, 2011, Ettinger continued to bill for his professional services in defending the Dragonetti action in an amount in excess of $35,000, and Ettinger continues to bill for interest accumulation following his discharge on December 30, 2011.

COUNT I

PROFESSIONAL NEGLIGENCE

BRADLEY AND TERI MILLER v. NEIL D. ETTINGER, ESQUIRE AND

ETTINGER & ASSOCIATES, LLC

18. Plaintiffs incorporate herein by reference, paragraphs 1 through 17 as though the same were set forth herein at length.

19. The Millers aver that Ettinger's legal services in connection with the underlying case were substandard and failed to comport with generally accepted standards of the legal profession, specifically:

    a.  Ettinger's advice that the underlying case had plausible legal merit was incorrect.

    b.  Ettinger failed to perform any legal research prior to initiating the underlying case.

    c.  Ettinger failed to recognize the legal significance of the Agreement of Sale for real estate underpinning the underlying case.

    d.  Ettinger's advice was rendered in the interest of his own legal fees, rather than in the best interest of the Millers.

    e.  Ettinger's advocacy in connection with the underlying case was flawed, particularly with respects the conduct of depositions, and the inadequacy of his responses to the Motions for Summary Judgment filed by the ReMax Defendants.

20. As a direct and proximate result of Ettinger's flawed legal advice and substandard services, the Millers were induced to file the underlying case which was doomed to failure and as a result incurred $21,159.81 in legal fees and costs to their pecuniary detriment, and additionally, were subjected to a subsequent lawsuit and potential liability for same in connection with the Dragonetti action.

21. The Millers seek reimbursement of legal fees and costs arising from Ettinger's substandard services, including fees incurred in both the underlying case and the Dragonetti action, some of which are continuing.

WHEREFORE, the Millers demand judgment against the Ettinger Defendants in an amount in excess of $50,000, in addition to prejudgment interest as provided by law, costs, and whatever additional relief the Court deems appropriate.

COUNT II

BREACH OF FIDUCIARY RESPONSIBILITY

BRADLEY AND TERI MILLER v. NEIL D. ETTINGER, ESQUIRE AND

ETTINGER & ASSOCIATES, LLC

22. Plaintiffs incorporate herein by reference, paragraphs 1 through 21 as though the same were set forth herein at length.

23. The Millers agreed to the common representation in defense of the Dragonetti action in reliance upon advice from Ettinger that there was no conflict of interest that would prevent him from representing all Defendants in the Dragonetti action unless and until the case proceeded to trial.

24. In reliance on Ettinger's advice, the Millers allowed Ettinger to continue to represent their interest from the inception of the Dragonetti action until December 30, 2011 when, after consultation with other attorneys, they discharged Ettinger and retained other counsel.

25. Ettinger's defense of the Millers in the Dragonetti action was in plain violation of the substantive law prohibiting attorneys from representing a client if the representation involves a concurrent conflict of interest, including situations where there is a significant risk that the representation of the client will be materially limited by the personal interests of the lawyer.

26. The Millers' defense in the Dragonetti action was materially limited by Ettinger's own interest in several respects, including but not limited to:

    a. Ettinger failed to apprise the Millers of their right to assert a Crossclaim for

indemnification against Ettinger for reliance upon his advice in connection with the decisions to initiate and continue the underlying case.

b. Ettinger advised the Millers to assert their attorney/client privilege in response to various discovery overtures as a means of shielding himself from his own potential liability in the Dragonetti action.

27. Ettinger billed for legal fees and services in connection with the Dragonetti action defense in excess of $35,000.

28. The Millers aver that Ettinger's legal services in connection with the defense of the Dragonetti action, violated his substantive obligations as an attorney to refrain from engaging in impermissible conflicts of interest.

29. The Millers aver that Ettinger's advice in connection with the defense of the Dragonetti action, including but not limited to his advice that the Millers assert attorney/client privilege, was not provided in good faith, or in the interests of his clients, but rather, was provided in his own interests as a shield to his own liability in this action.

30. Ettinger's billings in connection with the Dragonetti action defense were excessive and effectively used to pass on the costs of his own legal defense on to his clients, the Millers.

31. The Millers aver that by virtue of all of the above, Ettinger has breached his fiduciary obligation to the Millers entitling them to a refund of all legal fees paid to date in connection with the defense of the Dragonetti action, as well as indemnification for all past and future costs of defense incurred through the disposition of the Dragonetti action.

32. Ettinger's breach of his fiduciary obligations is outrageous entitling the Millers to an award of punitive damages.

WHEREFORE, the Millers demand judgment against the Ettinger Defendants in an amount in excess of $50,000, in addition to prejudgment interest as provided by law, costs, and whatever additional relief the Court deems appropriate.

RALPH J. BELLAFATTO, P.C.

By:_____
Ralph J. Bellafatto, Esquire
I.D. #43988
4480 William Penn Highway
Easton, Pa. 18045

<u>VERIFICATION</u>

Bradley Miller and Teri Miller, being duly sworn according to law, depose and say that they are the Defendants and that the facts set forth in the foregoing Complaint, are based upon information which they have furnished to their counsel and information which has been gathered by their counsel in the preparation of this lawsuit. The language of the foregoing pleading is that of counsel and not of the undersigned themselves. The undersigned have read the foregoing pleading and, to the extent that it is based upon information which has been given to their counsel, that information is true and correct to the best of their knowledge, information and belief. To the extent that the content of the foregoing pleading is that of counsel, the undersigned have relied upon counsel in making this affidavit. The undersigned understand that the statements therein are made subject to the penalties of 18 Pa. C. S. Section 4904 relating to unsworn falsification to authorities.

Date: 3/12/12                    _____
                                 Bradley Miller

Date: 3/12/12                    _____
                                 Teri Miller

**EXHIBIT "E"**

Michele C. Lareau, Esq.
Claims Consultant
Hartford Financial Products
Lawyers Professional Liability
277 Park Avenue, 16th Floor
New York, NY 10172
Tel. (212) 277-0858
Fax. (917) 464-6812
Email: michele.lareau@thehartford.com



March 21, 2012

**VIA EMAIL:NETTIGNER@ETTINGERLAW.NET**

Law Offices of Ettinger & Associates
1815 Schadt Avenue
Whitehall, PA 18052

**Re:**   Policyholder:   Law Offices of Ettinger & Associates
         Matter:  Bradley and Teri Miller
         Insurer:  Twin City Fire Insurance Company ("Twin City")
         Policy Number: LT 1616547
         Our Reference Number:  12395332

Dear Mr. Ettinger:

This is to acknowledge receipt by Twin City on March 14, 2012, of a
Summons and Complaint filed by Bradley and Terry Miller against Neil D.
Ettinger, Esq. and Ettinger & Associates, LLC , in the Court of Common Pleas
of Northampton County, Pennsylvania under Civil Action Number C-48-CV-
2012-644. Twin City refers you to its March 1, 2012 letter in which it
disclaimed coverage for this matter based upon the insured's prior knowledge
of this claim.  The contents of that letter are incorporated herein by this
reference.

This matter arises out of your representation of the claimants/buyers in a
lawsuit pertaining to the sale of land. You filed a complaint on October 13,
2005 on behalf of the claimants seeking damages in part for breach of
contract and alleged misrepresentations and fraudulent statements on the
part of the defendants/sellers. On May 28, 2009, the Court granted the
defendants' motion for summary judgment and dismissed the matter finding
that the causes of actions pled against the defendants were not viable causes
of action.

On August 27, 2009, a "Dragonetti" Complaint was filed against you and the
claimants by the defendants in the 2005 matter.  You entered an appearance
and began defending the claimants and yourself in that matter.  On
December 30, 2011, claimants' current counsel notified you via letter that
your representation of the claimants in the 2009 Dragonetti matter was

terminated and a copy of the claimants' file was requested. Claimants' counsel advised you in that letter that the claimants would be filing a claim against you for legal malpractice relating to your representation of the claimants in the 2005 matter and in the 2009 Dragonetti matter. On March 13, 2012, the claimants filed the current Complaint against you. The allegations in the Complaint arise out your representation of the claimants in the 2005 matter and in the 2009 Dragonetti matter. The claimants allege professional negligence and breach of fiduciary responsibility and are seeking reimbursement of legal fees and punitive damages.

Based upon all of the above, Twin City renews its coverage position set forth in and our March 1, 2012 letter advising you that no coverage is afforded for this matter.

As referenced in our March 1, 2012 letter, Section II 8 of the Policy excludes coverage for any claims that could have been reasonably foreseen, prior to the inception date of the policy. Section II: Exclusions subsection 8 of the subject policy provides in relevant part:

**SECTION II: EXCLUSIONS**
**EXCLUSIONS –**

This insurance does not apply to claims:

*      *      *

8. Arising out of a negligent act, error, omission or **personal injury** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a claim.

Based on your knowledge in August 2009 that a Complaint had been filed against you and the claimants arising out of your representation of the claimants in the underlying litigation, it appears that you could have reasonably foreseen that the current matter being reported might be expected to be the basis of a Claim prior to the Policy's inception of July 1, 2011. In this case, you were on notice of the allegations contained in the Complaint in August of 2009. You knew that your clients were defendants in a Dragonetti action based on your underlying representation – thus incurring costs, fees and/or a potential exposure in that litigation. You knew that the insureds were also named in that action. A reasonable lawyer in that situation would have been on notice that its acts errors or omissions in prosecuting the underlying 2005 litigation could be the basis of a claim. Twin City is denying coverage on that basis.

Further, it appears the allegations of the underlying Dragonetti complaint were a **claim** against the insureds in 2009 which should have been reported in 2009 to your malpractice carrier at that time. As this subsequent lawsuit

by your clients relates back to that same underlying representation, this is all one related claim. With that in mind, we refer you to Section I D: **LIMITS OF LIABILITY AND DEDUCTIBLE** which provides in relevant part:

Limits of Liability:

*       *       *

a. All **claims** arising out of the same or related negligent acts, errors, omissions or personal injury will be deemed to have been made when the first of such **claims** is made whether such demands are made against one or more **insureds** or whether such demands are made by one or more person and will be treated as a single **claim.**

The Complaint filed on or around March 13, 2012 and the 2009 Dragonetti Complaint arise out of the same or related negligent acts, errors or omissions and would be treated as a single claim pursuant to the aforementioned policy provision.  On the above bases, Twin City renews it coverage denies any obligation to defend or indemnify the insureds in this matter.

Notwithstanding the above denial of coverage, Twin City draws your attention to the Policy Section 1, B. Definitions, which provides in relevant part:

**DEFINITIONS**

*       *       *

**4. Damages** means a monetary judgment, final arbitration award, or settlement but does not include:

Damages does not include:

a. Any fines, sanctions or penalties, or punitive or exemplary damages; or

b. Restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an **insured** for **professional legal services;** or

*       *       *

Based upon the foregoing, Twin City would not be responsible for the defense or any payment related to punitive damages or the return of legal fees if coverage were otherwise found to exist.

In view of this renewed disclaimer of coverage, Twin City advises the insured to immediately take any and all steps necessary to protect his interests in this matter. In light of this coverage denial, Twin City will not provide the insured with a defense or indemnity to this matter.

Should you disagree with the above stated coverage position, or wish that we review any additional facts, information or documents which you feel might affect our  coverage determination , please forward same immediately to my

attention for review.

This statement of Twin City's position is without prejudice to the insureds to anyone else, or to Twin City, and is based upon the information provided to date.  Twin City reserves the right to supplement any grounds for reserving its rights or denying coverage under the referenced policy should any grounds appear hereafter.  This letter does not constitute, nor should it be construed by you or the insureds as a waiver of any terms, and/or condition of the policy or Twin City's rights hereunder, all of which continue in full force and effect.

Very Truly Yours,

Michele Lareau

EXHIBIT "F"

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

REMAX UNLIMITED REAL ESTATE : NO. C-48-CV-2009-9394
MARTIN J. HACKER :
NORMAN H. GUNDRUM :
  Plaintiffs :
   :
vs. :
   :
   :
BRADLEY AND TERRI MILLER :
NEIL D. ETTINGER, ESQUIRE :
ETTINGER & ASSOCIATES, LLC :
  Defendants :


## N O T I C E

  You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Crossclaim and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Crossclaim or for any other claim or relief requested by the Defendant(s). You may lose money or property or other rights important to you.

  <u>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.</u>

LAWYER REFERRAL SERVICE
155 SOUTH NINTH STREET
EASTON, PENNSYLVANIA 18042
TELEPHONE: (610) 258-6333

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL DIVISION - LAW

REMAX UNLIMITED REAL ESTATE      :      NO. C-48-CV-2009-9394
MARTIN J. HACKER                 :
NORMAN H. GUNDRUM          :
             Plaintiffs           :
                              :
vs.                                   :
                              :
BRADLEY AND TERRI MILLER       :
NEIL D. ETTINGER, ESQUIRE        :
ETTINGER & ASSOCIATES, LLC       :
             Defendants          :

## DEFENDANTS, BRADLEY AND TERI MILLER'S
## AMENDED ANSWER, NEW MATTER, AND CROSSCLAIM

AND NOW, COME the Defendants, Bradley and Teri Miller, by and through their

attorney, Ralph J. Bellafatto, with this Amended Answer, New Matter, and Crossclaim, of which

the following is a more complete statement.

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted upon information and belief.

6. Admitted.

7. Admitted.

8. Admitted.

9. Denied as stated. Exhibit B speaks for itself.

10. Admitted in part, denied in part. While it is admitted that the Defendants continued

to litigate the underlying case, it is denied that the Complaint was baseless, and it is specifically denied that the Miller Defendants continued to litigate the matter knowing that their claims were without merit or frivolous. Rather, the Miller Defendants, both before and after the initiation of the underlying action, consulted with Neil Ettinger, and were specifically advised that there were legally valid claims to assert based upon the truthful facts which they relayed to him. The Miller Defendants relied upon Ettinger's advice, and believed in good faith that they were pursuing meritorious claims, notwithstanding the ultimate disposition. It is specifically denied that the Miller Defendants pursued the underlying case for the purpose of extorting monies, or with the intent of harassing, annoying, and alarming the Plaintiffs. Strict proof thereof is demanded at the time of trial.

11. Admitted in part; denied in part. While it is admitted that the Miller Defendants filed a professional complaint with the Bureau of Professional and Occupational Affairs against Norman H. Gundrum, it is denied that the Millers made any unjust personal attacks. Rather, the professional Complaint was filed after consultation with Ettinger, and on the good faith belief that Gundrum's services in connection with the subject real estate transaction, were not provided honestly, and in accordance with the professional standards pertaining to realtors.

12. Denied as stated. It is admitted that the Department decided not to file formal charges in the case. The correspondence of September 11, 2006 speaks for itself.

13. Denied as stated. The Millers' Complaints, both as filed in connection with the underlying civil action, and in connection with the professional Complaint, are written documents which speak for themselves.

14. Denied as stated. It is admitted that the Plaintiffs filed a Motion for Summary Judgment in the underlying case on or about November 1, 2007. Exhibit E speaks for itself.

15. Admitted.

16. Denied. While it is admitted that the Miller Defendants subsequently resold the subject property for $82,000, the Millers reasonably believed that the three unit subdivision of the adjoining parcel adversely affected the value of their lot under contract, such that the resale value would have been even higher than $82,000 in a time of dramatically escalating real estate prices. Moreover, beyond the lost investment value of the property, the Miller Defendants believed that they had suffered intangible personal harm as the original intention was to purchase the lot for their own retirement home, rather than for investment purposes. After consultation with Ettinger, the Miller Defendants believed that they had a good faith basis to assert harm and damages in connection with the underlying litigation.

17. Denied as stated. While it is admitted that Plaintiffs' counsel repeatedly attempted to convince Defendants to withdraw the underlying action, on each occasion the Miller Defendants consulted with Ettinger regarding settlement or withdrawal of the underlying action and, based upon the legal advice received, elected to proceed.

18. Denied. By way of further answer, see the Miller Defendants' response to paragraph 17.

19. Denied as stated. It is admitted that Exhibit G was sent on or about February 27, 2009. Exhibit G speaks for itself.

20. Denied. After receiving Exhibit G, the Miller Defendants again consulted with Ettinger and, based upon that advice, elected to proceed with the litigation. It is admitted that a Second Motion for Summary Judgment was filed on or about March 26, 2009.

21. Admitted.

22. Admitted.

23. Denied as stated. The averments of paragraph 23 plead conclusions of law which require no response. By way of further answer, the Court's disposition of the Summary Judgment Motions speaks for itself, as does the Millers' deposition testimony.

24. Denied. Paragraph 24 pleads a conclusion of law which requires no response. To the extent that a factual response may be deemed required, the Miller Defendants aver that they initiated the underlying action believing, after consultation with Ettinger, that they had probable cause to bring a plausibly meritorious claim, notwithstanding the ultimate disposition. It is denied that the underlying claim was brought for an improper purpose.

25. Denied. The Miller Defendants provided accurate, factual information to their attorney Ettinger, who subsequently drafted the specific language set forth in the underlying Complaint. It is denied that the Millers fabricated any facts which they provided to their attorney.

26. Denied. Paragraph 26 pleads a conclusion of law which requires no response.

<u>COUNT I</u>

<u>WRONGFUL/MALICIOUS USE OF CIVIL PROCEEDINGS</u>

<u>42 PA. C.S. SECTION 8351 - 8354</u>

27. Paragraph 27 is an incorporation averment which requires no response.

28. Denied. While the Miller Defendants initiated the underlying civil proceedings against the Plaintiffs, they did so only after consultation with their attorney Ettinger, and in the good faith belief that there were legally meritorious claims to be pursued, notwithstanding the ultimate disposition.

29. Denied. The Miller Defendants were not grossly negligent in any respect, nor did they act without probable cause, nor for an improper purpose. Rather, the Miller Defendants

initiated the underlying civil action in the good faith belief that there were meritorious claims to

be pursued, notwithstanding the ultimate disposition, after consultation with their attorney

Ettinger.

30.   Admitted in part and denied in part.  It is admitted that the Miller Defendants

consulted with Neil Ettinger who advised the Miller Defendants to pursue and continue the

underlying claims.  As to Ettinger's state of mind, the Miller Defendants have insufficient

information to respond.

31.   Denied.  The Miller Defendants do not understand the averments of paragraph 31 as

phrased.  In an attempt to be responsive, the Miller Defendants aver that they provided truthful

facts in connection with the underlying litigation, and believed that they were pursing legally

meritorious claims after consultation with their attorney Ettinger, notwithstanding the ultimate

disposition.

32.   Denied.  The Miller Defendants provided truthful information to their attorney

Ettinger, and believed that they were pursuing legally meritorious claims based upon the advice

of their attorney Ettinger.

33.   Denied.  The Miller Defendants continued the underlying litigation in the good faith

belief that they were pursuing legally meritorious claims after consultation with their attorney

Ettinger, and not for any malicious or improper purpose.

34.   Admitted.

35.   Denied.  Paragraph 35 pleads a conclusion of law which requires no response.  To the

extent paragraph 35 requires a factual response, the Miller Defendants deny that they acted in any

willful, wanton, malicious, or improper purpose.  By way of further answer, reference is made to

the Miller Defendants' responses to the averments above.

36. Denied. It is denied that Plaintiffs sustained any damages as a result of any acts or omissions by the Miller Defendants. The Miller Defendants are without information as respects Plaintiffs' allegation of damages.

37. Denied. Paragraph 37 pleads a conclusion of law which requires no response.

## COUNT II

## VICARIOUS LIABILITY

38. Paragraph 27 is an incorporation averment which requires no response..

39 – 44. Paragraphs 38 – 44 plead averments against a Defendant other than answering Defendants, and accordingly, no response is required by these Defendants.

## NEW MATTER

45. Defendant Millers hereby incorporate paragraphs 1 through 44 as though the same were set forth herein at length.

46. Prior to initiating the underlying Complaint, the Miller Defendants consulted with Ettinger regarding their dissatisfaction with Gundrum's services and, in particular, his failure to provide accurate information regarding the subdividability of the adjoining lot and his responsibilities as their realtor in connection with the underlying real estate transaction.

47. The Miller Defendants provided accurate and truthful information to Ettinger who advised that they had viable claims to assert against Gundrum which could and should be pursued.

48. The Miller Defendants relied upon Ettinger's advice in deciding to initiate and continue the underlying civil proceedings against the Plaintiffs.

49. The Millers' sole purpose in pursing the underlying civil action against the Plaintiffs was to secure lawful and just compensation for Gundrum's failure to provide accurate advice

regarding the subdividability of the adjoining parcel.

50. The circumstances of the dismissal of the underlying action are not such as give rise to Plaintiffs' claims for abuse of civil process.

WHEREFORE, the Miller Defendants request judgment in their favor, together with costs, and whatever additional relief the Court deems appropriate.

## CROSSCLAIM

## BRADLEY MILLER AND TERI MILLER vs. NEIL ETTINGER, ESQUIRE AND ETTINGER & ASSOCIATES, LLC

51. Defendant Millers hereby incorporate paragraphs 1 through 50 as though the same were set forth herein at length.

52. At all times material hereto the Miller Defendants relied upon Neil Ettinger for legal advice in connection with the underlying litigation, and their decisions with respect to initiation, settlement position, and continuation of the underlying lawsuit, were all consistently guided by his advice.

53. At all times material hereto the Miller Defendants were not learned in the laws relating to the underlying claims, and relied exclusively upon Ettinger in those regards.

54. Following the disposition of the underlying civil action and the initiation of this Dragonetti action, Ettinger advised the Miller Defendants that there was no conflict of interest for him to represent them jointly in defending the instant action, along with defending himself and his law firm.

55. At no time did Ettinger advise the Miller Defendants of their right to file a Crossclaim against him for reliance upon his advice in connection with the underlying civil action.

56. Ettinger affirmatively represented that their was no conflict of interest for him to assert a common defense against Plaintiffs herein.

57. The Miller Defendants relied upon Ettinger's advice in allowing him to represent their interests in defending this action until December 30, 2011 when, after consultation with other attorneys, the Millers discharged Ettinger from further representation.

58. From the outset of this civil action through December 30, 2011, Ettinger continued to bill for his professional services in defending this Dragonetti action in an amount in excess of $35,000, and Ettinger continues to bill for interest accumulation following his discharge on December 30, 2011.

59. The Miller Defendants aver that Ettinger's legal services in connection with the defense of this Dragonetti action, violates his substantive obligations as an attorney to refrain from engaging in impermissible conflicts of interest.

60. The Miller Defendants aver that Ettinger's advice in connection with the defense of this Dragonetti action including but not limited to his advice that the Miller assert attorney/client privilege, was not provided in good faith, or in the interests of his clients, but rather, was provided in his own interests as a shield to his own liability in this action.

61. The Miller Defendants aver that Ettinger's billings have been excessive and that Ettinger's billings, in effect, seek to pass on the costs of his own legal defense on to his clients, the Millers.

62. The Miller Defendants aver that by virtue of all of the above, Ettinger has breached his fiduciary obligation to the Millers entitling them to a refund of all legal fees paid to date in connection with the defense of the Dragonetti action, as well as indemnification for all past and future costs of defense incurred through the disposition of this civil action.

63. The Miller Defendants further aver that in the event it is judicially determined that the Miller Defendants are liable to Plaintiffs, the Millers join the Ettinger Defendants for contribution and/or indemnification, given their sole reliance on Ettinger's advice in connection with the prosecution of the underlying claim.

WHEREFORE, Defendants Bradley and Teri Miller join Neil Ettinger and Ettinger & Associates, LLC for contribution; indemnification, and reimbursement/indemnification for costs of the defense, together with an award of legal costs, and whatever additional relief the Court deems appropriate.

RALPH J. BELLAFATTO, P.C.

By:_____
Ralph J. Bellafatto, Esquire
I.D. #43988
4480 William Penn Highway
Easton, Pa. 18045

Exhibit B

CASE HISTORY
Case Number: C-0048-CV-2012-04598
Title: ETTINGER VS HARTFORD FIRE CO

================================================================================

CASE MASTER

Case Number: C-0048-CV-2012-04598
Case Title: ETTINGER VS HARTFORD FIRE CO

Caption (P):  ETTINGER & ASSOCIATES, LLC
              AND NEIL D. ETTINGER, ESQUIRE

Caption (D):  THE HARTFORD/TWIN CITY FIRE
              INSURANCE COMPANY

Filing Type: NEW FILING              Filing Date: 05/16/2012
Case Status: ACTIVE                  Status Date: 05/16/2012

Case Type: CIVIL ACTION              Will Date:

Judge:
Prosecutor:
Jurisdiction Area:

Transferred Case: No        Previous Case Number:
Refiled: No                 Original Court:
Consolidated: No   Child Support: No        Victim: No
Sealed: No         Expunged: No        Restricted: No
------------------------------------------------------------------------
                            PARTY DETAIL

D-1   HARTFORD TWIN CITY FIRE INSURANCE COMPANY THE
Status: ACTIVE                       Status Date: 05/16/2012


ADDRESS INFORMATION:
Filing Address:
ONE HARTFORD PLAZA
HARTFORD, CT 06155

Current Address:
ONE HARTFORD PLAZA
HARTFORD, CT 06155
------------------------------------------------------------------------
                            PARTY DETAIL

P-1   ETTINGER & ASSOCIATES LLC
Status: ACTIVE                       Status Date: 05/16/2012


ATTORNEYS:
NEIL D ETTINGER ESQ              Inactive: N
   PRIVATE                       ACTIVE      Date: 05/22/2012

CASE HISTORY
Case Number: C-0048-CV-2012-04598
Title: ETTINGER VS HARTFORD FIRE CO

=============================================================================

ADDRESS INFORMATION:
Filing Address:
1815 SCHADT AVENUE
WHITEHALL, PA 18052

Current Address:
1815 SCHADT AVENUE
WHITEHALL, PA 18052
-------------------------------------------------------------------------

PARTY DETAIL

P-2   ETTINGER NEIL D ESQ
Status: ACTIVE                        Status Date: 05/16/2012

ATTORNEYS:
NEIL D ETTINGER ESQ              Inactive: N
   PRIVATE                         ACTIVE      Date: 05/22/2012
ADDRESS INFORMATION:
Filing Address:
1815 SCHADT AVENUE
WHITEHALL, PA 18052

Current Address:
1815 SCHADT AVENUE
WHITEHALL, PA 18052
-------------------------------------------------------------------------

CIVIL COMPLAINT

COMPLAINT:
Complaint Date: 05/16/2012        Complaint Sequence: 1
Event: OPN:COMPLAINT                        Jury: No

Plaintiff
Party: P-1  ETTINGER & ASSOCIATES LLC
Party: P-2  ETTINGER NEIL D ESQ

Defendant:
Party: D-1  HARTFORD TWIN CITY FIRE INSURANCE COMPANY THE

CAUSE OF ACTION:
Cause of Action: CIVIL ACTION
Plaintiff        P-2    ETTINGER NEIL D ESQ
Plaintiff        P-1    ETTINGER & ASSOCIATES LLC
Defendant        D-1    HARTFORD TWIN CITY FIRE INSURANCE COM
-------------------------------------------------------------------------

EVENT SUMMARY

Party: -

CASE HISTORY
Case Number: C-0048-CV-2012-04598
Title: ETTINGER VS HARTFORD FIRE CO

=========================================================================

Date: 05/16/2012          Event: OPN:COMPLAINT
Action:      Form:      Judge:                      Deputy:
Result:                      Amount: $0.00      Document Number:

Party: -
Date: 05/16/2012          Event: CNV: CIVIL FILING FEES
Action:      Form:      Judge:                      Deputy: 91
Result:                      Amount: $0.00      Document Number:
$135.50 COMPLAINT IN CIVIL ACTION PAID.

Party: -
Date: 05/16/2012          Event: MISC: FILE ONLY
Action:      Form:      Judge:                      Deputy: 91
Result:                      Amount: $0.00      Document Number:

Party: -
Date: 05/16/2012          Event: AOPC: CONTRACT OTHER
Action:      Form:      Judge:                      Deputy: 91
Result:                      Amount: $0.00      Document Number:
BAD FAITH INSURANCE

Party: -
Date: 05/22/2012          Event: MISC:ENTRY OF APPEARANCE
Action:      Form:      Judge:                      Deputy: 81
Result:                      Amount: $0.00      Document Number:
ON BHEALF OF ETTINGER & ASSOCIATES , LLC & NEIL D.
FILED BY NEIL D ETTINGER, ESQ

Party: -
Date: 05/22/2012          Event: MISC:CERTIFICATE OF SERVICE
Action:      Form:      Judge:                      Deputy: 6
Result:                      Amount: $0.00      Document Number:
OF THE COMPLAI8NT UPON THE DEFENDANT ON MAY 21, 2012 BY U.S.
CERT MAIL FILED BY NEIL D. ETTINGER, ESQ.