IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ETTINGER & ASSOCIATES, LLC, | : | CIVIL ACTION |
| NEIL D. ETTINGER, ESQUIRE, | : | |
|     Plaintiffs | : | |
| | : | |
| vs. | : | NO. 12-3274 |
| | : | |
| THE HARTFORD/TWIN CITY FIRE | : | |
| INSURANCE COMPANY, | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                    May  22, 2014

      Plaintiffs Ettinger & Associates, LLC and Neil D. Ettinger, Esquire (collectively "the law firm") brought this case ("the Coverage Action") in the Court of Common Pleas of Northampton County seeking a declaratory judgment that it was entitled to coverage under a professional liability policy issued by Defendant The Hartford/Twin City Fire Insurance Company ("Twin City").  Twin City removed the case to this court, filed an Answer, and has now filed a Motion for judgment on the pleadings.  For the following reasons, the Motion is granted and judgment is entered on behalf of Twin City.

**I.  STANDARD OF REVIEW**

      "Pursuant to Federal Rule of Civil Procedure 12(c), judgment on the pleadings will be granted only if 'the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.'"  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)).  "A party may move for judgment on the pleadings '[a]fter the pleadings are closed — but early enough not to delay trial.'"  Id. (quoting Fed. R. Civ. P. 12(c)).  In deciding a motion for judgment on the pleadings, the court considers the pleadings and exhibits attached thereto,

matters of public record, and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." Id.  Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted).  Accordingly, a motion for judgment on the pleadings will be granted if a plaintiff has not articulated enough facts "to raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is not enough for plaintiffs to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.  Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  The Court "may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

     When a court considers matters outside the pleadings, a motion under Rule 12 ordinarily must be converted to a summary judgment motion because plaintiff has not had an adequate opportunity to respond to the extraneous evidence.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  However, where the authenticity of documents appended to the moving papers are not disputed and the plaintiff's complaint relies upon them, a plaintiff is presumably on notice of their contents and had the opportunity to refute the evidence.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Ben. Guar. Corp., 998 F.2d at 1196-97.  This exception to the general rule prevents a

plaintiff with a legally deficient claim from surviving a Rule 12 motion simply by failing to attach to the complaint a dispositive document upon which his claim relies. Pension Ben. Guar. Corp., 998 F.2d at 1196. Because the materials appended to Twin City's Motion[1] are not disputed by the plaintiffs and the complaint relies upon them, they will be considered part of the pleadings.

## II. FACTS

The events leading to the underlying malpractice action began in 2005 when Bradley and Teri Miller (collectively "the Millers") hired the law firm to represent them in a dispute with their realtors, Norman H. Gundrum and Martin J. Hacker d/b/a ReMax Unlimited Real Estate ("ReMax"), over the plaintiffs' purchase of a lot in Lehigh Township, Northampton County, Pennsylvania. Def. Ex. I at 1-3. Gundrum had allegedly represented to the Millers that a lot adjacent to the lot that they wished to purchase could not be subdivided. Id. at 27. Several months prior to closing, however, the Millers learned that the owners of the adjacent lot had applied for and received a zoning variance to subdivide it. Def. Ex. II at 146; Def. Ex. I at 4-5. The Millers nevertheless proceeded to closing, purchased their lot for $55,000 and, less than two months later, successfully resold it for $82,000. Id. Although they earned $27,000 profit from their purchase and sale, the Millers consulted with Ettinger to determine whether they had viable claims against ReMax over the alleged misrepresentation about the adjacent lot. Def. Ex. I at 27. Ettinger advised them that they had a claim, and commenced a lawsuit against ReMax on June 8, 2005, on behalf of the Millers in the Court of Common Pleas of Northampton County (the "Realtor Action"). Id. The Millers alleged claims of (1) fraudulent misrepresentation, (2)

---

[1] Twin City has appended to its Motion (1) the law firm's complaint in this action, along with all exhibits attached thereto by the plaintiffs (Def. Ex. I), and (2) the underlying complaint and the exhibits attached thereto. (Def. Ex. II.) For ease of citation, Twin City has sequentially paginated its two exhibits. I will cite to the exhibits by the pagination supplied by Twin City.

negligent misrepresentation, (3) breach of contract, (4) promissory estoppel, and (5) violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"). Id. The ReMax defendants repeatedly asserted that the lawsuit was frivolous and warned Ettinger that they would sue his clients for "fraud, abuse of process and malicious prosecution," if the lawsuit was not withdrawn. Id. Ignoring these warnings, the Millers followed Ettinger's advice and pursued the lawsuit to its conclusion. Id.

The Court of Common Pleas rejected the Millers' claims in two separate summary judgment orders. Id. In the first order, the court dismissed the Millers' breach of contract and promissory estoppel claims because they had incurred no damages. Def. Ex. II at 117-18. In the second order, issued one year later after further discovery, the court dismissed the Millers' remaining claims because they had produced no evidence that Gundrum had misrepresented anything to the Millers. Id. at 155-59. The court found that the Millers admitted Gundrum's statements were true at the time that they were made. Id. at 156.

ReMax then filed a lawsuit against the Millers, Ettinger, and the law firm in August 2009, alleging wrongful abuse of civil proceedings pursuant to the Dragonetti Act, 42 Pa. Con. Stat. §§ 8351-8354 (the "Dragonetti Action"). Id. at 37-184; Def. Ex. I at 3-4, 28. The Dragonetti Action alleged that Ettinger "not only knew his filings and prosecution of the [Realtor Action] claims were wrongful and malicious under the law, but encouraged and/or permitted his clients to pursue those claims rather than terminating or withdrawing from the action as their counsel, even in the face of being forewarned of the consequences." Def. Ex. II at 45; Def. Ex. I at 4-5, 28. Ettinger represented the Millers and himself in the Dragonetti Action, having allegedly advised them that there was no conflict of interest in that dual representation. Def. Ex. I at 27.

The Millers fired Ettinger in December 2011, informing him through their new attorney, Ralph Bellafatto, Esquire, that they would likely seek claims against him for professional negligence.  Id. at 14-17.  Three months later, in March 2012, the Millers filed a malpractice complaint against Ettinger and the law firm in the Northampton County Court of Common Pleas (the "Malpractice Action").  Id. at 3.  The Millers also filed a similar cross claim against Ettinger in the Dragonetti Action.  Id. at 4; Def. Ex. II at 4.  The Millers alleged that Ettinger had committed professional negligence in the Realtor Action by inducing them to pursue a frivolous lawsuit against the ReMax defendants which, in turn, led to the subsequent Dragonetti Action against them.  Id. at 29.  The Millers further alleged that Ettinger had breached fiduciary duties by, among other things, (1) improperly advising them that there was no conflict of interest that would prevent him from representing all defendants in the Dragonetti Action unless and until the case proceeded to trial and (2) failing to advise them of their right to file a cross claim against him.  Id. at 28-31.

In this Coverage Action, Ettinger and the law firm seek a declaratory judgment that they are entitled to coverage under Defendant's Claims Made Professional Liability Policy issued to the Law Offices of Ettinger & Associates, LLC, Policy No. LT 1616547, for the Policy Period of July 1, 2011 to July 1, 2012 (the "Policy").  Def. Ex. II at 12-36.  The Policy provides coverage for "claims" first made during the Policy period for negligent acts, errors, or omissions, or personal injury in the rendering of professional legal services:

> We will pay on behalf of an **insured**, subject to the **limit of liability**, such **damages** and **claims expenses** in excess of the applicable deductible for **claims** made during the **policy period** or applicable **extended reporting period** and reported to us in writing immediately, but in no event later than sixty (60) calendar days after the expiration date of the **policy period** or applicable **extended reporting period**.  The **damages** must arise out of a negligent act, error, or omission or **personal injury** in the rendering of

>or failure to render **professional legal services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

Def. Ex. II at 17 (Policy, § I A) (emphasis in original[2]).  The Policy defines "claim" to mean (a) "[a] demand received by an **insured** for money or services alleging a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** . . . ." or (b) "[s]ervice or receipt of a suit or arbitration proceedings or any other alternative dispute resolution proceeding in which **damages** are claimed." Id. (Policy, § I B 2) (emphasis in original).)

>The Policy contains a "prior knowledge" exclusion that states:
>
>This insurance does not apply to **claims**:
>
>. . .
>Arising out of a negligent act, error, omission or **personal injury** occurring prior to the inception date of this policy if any **insured** prior to the inception date knew or could have reasonably foreseen that such negligent act, error, omission or **personal injury** might be expected to be the basis of a **claim**.

Def. Ex. II at 23 (Policy § II 8) (emphasis in original).  The Policy's Limits of Liability Section also contains a "Relation Back Provision" that states that "[a]ll **claims** arising out of the same or related negligent acts, errors, omissions or **personal injury** will be deemed to have been made when the first of such **claims** is made whether such demands are made against one or more **insureds** or whether such demands are made by one or more persons and will be treated as a single **claim**."  Def. Ex. II at 20 (Policy § I D 1 a) (emphasis in original).

Ettinger notified Twin City on January 9, 2012, of Attorney Bellafatto's December 2011 letter terminating Ettinger's representation in the Dragonetti Action.  Def. Ex. I at 3.  Twin City

---

[2] Bolded terms are terms that are defined in the Policy.

disclaimed coverage on March 2, 2012, based upon the insured's prior knowledge of the claim, citing the Prior Knowledge Exclusion and the Relation Back Provision. Def. Ex. I at 4, 19; Def. Ex. II at 3. Following its receipt of the Malpractice Action complaint, Twin City reiterated these bases for denial. Def. Ex. I at 4, 34; Def. Ex. II at 3. Twin City told the plaintiffs that the Prior Knowledge Exclusion precluded coverage because the Dragonetti Action, which was commenced before the Policy's inception date of July 1, 2011, would have put a reasonable lawyer on notice that his acts, errors, or omissions in the Realtor Action might be the basis of a future malpractice action:

> You knew your clients were defendants in a Dragonetti action based on your underlying representation -- thus incurring costs, fees and/or a potential exposure in that litigation. You knew that the insureds were also named in that action. A reasonable lawyer in that situation would have been on notice that its acts errors or omissions in prosecuting the underlying 2005 litigation could be the basis of a claim.

Def. Ex. I at 20-21. Twin City also informed Plaintiffs that the Policy's Relation Back Provision applied because "[t]he [Malpractice Action] filed on or around March 13, 2012 and the 2009 Dragonetti Complaint arise out of the same or related negligent acts, errors or omissions and would be treated as a single claim pursuant to the aforementioned policy provision." Def. Ex. I at 37.

In the Coverage Action complaint, the plaintiffs seek declaratory relief and raise a statutory bad faith claim, alleging that Twin City lacked a reasonable basis for denying coverage under the Prior Knowledge Exclusion because Ettinger could not have reasonably foreseen that the Dragonetti Action might be the basis of a future malpractice claim against him. They allege:

> [I]t is impossible for the insured or any insured or "any reasonable lawyer" could have perceived [sic] that as of August, 2009, at the time of the filing of the Dragonetti action . . . that said filing somehow triggered the insured's knowledge or that it should have been or could have been

>   reasonably foreseen that a malpractice and/or negligent misrepresentation
>   action could or would be filed . . . sometime in the future . . . based on said
>   filing of the Dragonetti action as of 2009.

Def. Ex. I at 4.  Plaintiffs further allege that the Millers "begged and repeatedly required the underlying representation for the Dragonetti Action, which based on said request, the insured nor could any reasonable lawyer could not [sic] have perceived the incurrence [sic] of a malpractice and/or negligent representation action . . . ."  Id. at 4-5.

### III. DISCUSSION

#### A. The Prior Knowledge Exclusion

In Pennsylvania, insurance policy exclusions, like the Prior Knowledge Exclusion at issue here, are strictly construed against the insurer.  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983); First Pa. Bank v. Nat'l Union Fire Ins. Co., 580 A.2d 799, 802 (Pa. Super. Ct. 1990).  The United States Court of Appeals for the Third Circuit has held that, under Pennsylvania law, a prior knowledge exclusion in a professional liability policy,

>   calls for a two-stage analysis.  First, it must be shown that the insured knew
>   of certain facts.  Second, in order to determine whether the knowledge
>   actually possessed by the insured was sufficient to create a "basis to believe,"
>   it must be determined that a reasonable lawyer in possession of such facts
>   would have had a basis to believe that the insured had breached a
>   professional duty.  That the insured denies recognizing such a basis on
>   grounds of ignorance of the law, oversight, psychological difficulties, or
>   other personal reasons is immaterial.

Selko v. Home Ins. Co., 139 F.3d 146, 152 (3d Cir. 1998) (internal footnote omitted).  The court stated that this construction "does not relieve the insurer of its burden to prove that the necessary underlying facts were actually known to the insured.  But the insured may not successfully defend on the ground that he was uniquely unaware of ethical and fiduciary principles that all

lawyers would know or that he did not understand the implications of conduct and events that any reasonable lawyer would have grasped." Id.

The Selko Court concluded that a prior knowledge exclusion applies where a reasonable attorney "would have realized that he had a dissatisfied client who would undoubtedly take further legal action absent a miraculous and unlikely turnaround" in events. Id. at 154. Applying this holding, the Third Circuit later held that, when an attorney "has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him. He cannot assume that the claim will not be brought because he subjectively believes it is time barred or lacks merit." Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 307 (3d Cir. 2001).

Twin City argues that the facts and circumstances pled in the Dragonetti Action would have placed an objectively reasonable attorney in Ettinger's position on notice that a claim existed prior to the Policy's July 1, 2011, inception date, and thus the Policy's Prior Knowledge Exclusion precludes coverage. It contends that the underlying pleadings establish that Ettinger was objectively aware of the facts underlying the claim at least as early as when the Dragonetti Action was filed against him and his clients in August 2009. It argues that an attorney who is named as a defendant in a Dragonetti complaint has a reasonable basis to believe that his or her conduct might be the basis of a similar professional liability claim by his own client. Twin City notes that the Dragonetti Action alleged Ettinger "not only knew his filings and prosecution of the underlying [Realtor Action] claims were wrongful and malicious under the law, but encouraged and/or permitted his clients to pursue those claims . . . even in the face of being forewarned of the consequences." See Def. Ex. II at 45. It argues that because the Dragonetti

9

Action exposed Ettinger's clients to potential liability for Ettinger's own misconduct in filing the Realtor Action, an objectively reasonable attorney would have known that the Dragonetti Action might result in a future malpractice claim.

> Plaintiffs respond that they have plausibly pled that
>
>> it is impossible that the insured or any insured or 'any reasonable lawyer' could have perceived that as of August 2009, at the time of the filing of the Dragonetti Action by a non-client against the Plaintiff/Insured and Plaintiff's [sic] client at that time, that said filing somehow triggered the insured's knowledge or that it should have been or could have been reasonably foreseen that a malpractice and/or a negligent misrepresentation action could or would be filed sometime in the future (specifically in March of 2012, over three years later) based on said filing of the Dragonetti action as of 2009.

Pl. Resp. at 5-6 (quoting Def. Ex. I at 4 (Compl. ¶ 15)).  They also assert that they have plausibly pled that "the then-clients [sic] of the insured, begged and repeatedly required the underlying representation for the Dragonetti action, which based on said request, neither the insured, nor any reasonable lawyer, have perceived the incurrence of a malpractice and/or negligent representation action based on the Millers' request for continued representation." Id. at 6 (quoting Def. Ex. I at 4 (Compl. ¶ 16)).  Based on these allegations, the plaintiffs argue that "it is undisputed that Plaintiff/Respondent [sic] disagrees that a reasonable lawyer, faced with the actions of ReMax and the Millers could have foreseen a malpractice action" because the "ultimate issue in this case is when the Plaintiff knew of certain facts prior to the Policy inception date and whether a reasonable lawyer in possession of such fact [sic] would have a basis to believe that they might be expected to be the basis of a claim." Id. at 7.

I find, based on the face of the complaints in the underlying actions, that the Prior Knowledge Exclusion applies as a matter of law to bar coverage.  The plaintiffs do not dispute that Ettinger had actual knowledge of the following allegations in the underlying actions: (1) he

filed the Realtor Action, (2) was warned that the claims therein were baseless, (3) continued to pursue them, (4) summary judgment was entered against his clients, (5) the defendants in the Realtor Action then filed the Dragonetti Action against both him and his clients based on his actions in advising the Millers to file the Realtor Action and his continued pursuit of that action after being warned that the claims were baseless. Thus the only question that must be resolved in determining whether the Prior Knowledge Exclusion applies is the legal question of whether knowledge of the fact that those allegations were made was sufficient for a reasonable attorney in Ettinger's position to have a basis to believe prior to the policy period that he had breached a professional duty.

The Dragonetti Act authorizes a defendant in a prior wrongful civil lawsuit to bring what is essentially a legal malpractice action against the attorney who represented the plaintiff in the prior action. Schmidt v. Currie, 470 F. Supp. 2d 477, 482 (E.D. Pa. 2005); Chizmar v. Borough of Trafford, Civ. A. No. 09-0188, 2009 WL 1743687 (W.D. Pa. June 18, 2009). In Dragonetti actions against an attorney, as in traditional legal malpractice actions, plaintiffs have a similar burden of proving that the defendant attorney failed to perform in accordance with acceptable professional standards. Id. Twin City concludes that, because a Dragonetti claim is essentially identical to a legal malpractice claim, a reasonable attorney would know that the filing of such a claim against himself and his client constitutes an allegation of professional negligence for purposes of the prior knowledge exclusion of the attorney's professional liability policy.

I find that a reasonable attorney would know that the filing of a Dragonetti claim against himself and his client constitutes an allegation of professional negligence for purposes of his policy's prior knowledge exclusion. Attorney Ettinger knew that the Court of Common Pleas

had entered summary judgment on the Millers' claims in the Realtor Action on the grounds that they had (1) failed to come forward with evidence of misrepresentation and (2) failed to show that they had incurred damages. The court specifically found that the Millers had admitted that Realtor Gundrum's statements were true at the time that they were made. When the ReMax plaintiffs filed the Dragonetti Action against the Millers, Ettinger, and the law firm in August 2009, they alleged that Ettinger "not only knew his filings and prosecution of the [Realtor Action] claims were wrongful and malicious under the law, but encouraged and/or permitted his clients to pursue those claims rather than terminating or withdrawing from the action as their counsel, even in the face of being forewarned of the consequences." Def. Ex. II at 45; Def. Ex. I at 4-5, 28. These allegations were sufficient as a matter of law to show that a reasonable attorney in Ettinger's position would have had a basis to believe that he had breached a professional duty.

     I find further that the plaintiffs' allegations do not plausibly allege that a reasonable lawyer in possession of such facts would not have had a basis to believe that the insured had breached a professional duty. The plaintiffs' allegation that it was "impossible" for an insured to have perceived that the filing of the Dragonetti Action by a non-client would later trigger a malpractice action is nothing more than a legal conclusion that cannot satisfy the pleading standard. Whether or not it was possible to have foreseen that a malpractice claim would be filed is merely a restatement of the "reasonable attorney" standard. It is the attorney's objective knowledge that allegations have been pled in the underlying complaint that controls, not the attorney's subjective belief about what might happen. See Coregis Ins. Co., 264 F.3d at 307 (stating that an attorney "cannot assume that the claim will not be brought because he subjectively believes it is time barred or lacks merit"). The plaintiffs' allegation that the Millers

"begged and repeatedly required the underlying representation" also does not satisfy the pleading standard.  Ettinger's objective knowledge of facts that could lead to a professional liability claim must be derived from the underlying allegations, not his subjective understanding of his former clients' motives and desires.  As the Selko court stated, "the insured may not successfully defend on the ground that he was uniquely unaware of ethical and fiduciary principles that all lawyers would know or that he did not understand the implications of conduct and events that any reasonable lawyer would have grasped."  Selko, 139 F.3d at 152; see also Mirarchi v. Westport Ins. Corp., Civ. A. No. 99-4331, 2003 WL 1918975, at *7 (E.D. Pa. Apr. 21, 2003) (stating that "an attorney's subjective belief, based upon his relationship with his client, that the client would not bring a malpractice suit is irrelevant to [the prior knowledge exception's] objective analysis").

Accordingly, I conclude as a matter of law from the content of the underlying complaints that Ettinger actually possessed information that a reasonable lawyer in possession of such facts would have understood to be a sufficient basis to believe that he had breached a professional duty.  Thus, the Policy's Prior Knowledge Exclusion bars coverage.

    B.  <u>The Relation Back Provision</u>

In the alternative, Twin City argues that the Policy's "Relation Back Provision," which limits coverage to claims first made (and reported) during the Policy Period of July 1, 2011 to July 1, 2012, precludes coverage as the Malpractice Action relates back to the 2009 Dragonetti Action, since the two lawsuits arise out of the same negligent acts, errors, or omissions.  To support its argument, Twin City cites to the similarities between the allegations upon which the claims of the two cases are based, namely that:  (1) the Millers consulted with Ettinger

concerning their dissatisfaction with the actions of ReMax; (2) they relied on Ettinger's advice in deciding to file the Realtor Action; (3) the ReMax defendants asserted that the claims Ettinger filed in the Realtor Action on the Millers' behalf were frivolous; and (4) the claims were eventually dismissed. Def. Br. at 19-20 (citing Def. Ex. I at 27 (Malpractice Action Complaint at ¶¶ 5, 7, 8, 10); Def. Ex. II at 42-44 (Dragonetti Action Complaint at ¶¶ 13, 7, 9, 22)). Twin City also notes that the Malpractice Action complaint specifically alleges that "[a]s a direct and proximate result of Ettinger's flawed legal advice and substandard services, the Millers were induced to file the [Realtor Action] which was doomed to failure," and which subjected them to potential liability in the Dragonetti Action. Def. Br. at 20-21 (citing Def. Ex. I at 29).

The plaintiffs respond that no reasonable lawyer could have foreseen that a malpractice action would be filed because the claims the Millers raised in the Malpractice Action are not the same as the claims raised by ReMax in the Dragonetti Action. They argue that the Malpractice Action asserts two claims: (1) that Ettinger provided bad advice by telling the Millers they had a viable claim against ReMax; and (2) that his dual representation of himself and them in the Dragonetti action was professional malpractice. Pl. Br. at 9. They argue that the gravamen of the Dragonetti Action, on the other hand, "asserted that the underlying [Realtor Action] was legally frivolous." Id.

When determining whether claims relate back to or arise from the same facts, courts review the complaint filed in the prior action to determine whether the acts at issue in it — not the legal theories or claims that it propounds — are the same as, or related to, the acts alleged in the present dispute. See, e.g., Bensalem Twp. v. Int'l Surplus Lines Ins. Co., Civ. A. No. 91-5315, 1992 WL 142024 at *2 (E.D. Pa. 1992) (holding that, even though underlying lawsuit filed

14

before the policy period began alleged different legal theories, because it was clear that the two actions involve the same underlying circumstance the policy's relation back exclusion applied to bar coverage), *rev'd on other grounds*, 38 F.3d 1303 (3d Cir. 1994); ACE Am. Inc. Co. v. Ascend One Corp., 570 F. Supp. 2d 789, 798 (D. Md. 2008) ("In general, courts have found claims to be interrelated when they have a common nexus of facts and arose out of the same occurrence of wrongful acts."); Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc., 930 F. Supp. 825, 850 (E.D.N.Y. 1996) (citing Comerica Bank v. Lexington Ins. Co., 3 F.3d 939 (6th Cir. 1993)) (excluding subsequent litigation from policy coverage because it involved the same agreement to sell stock as the original suit); Ameriwood Indus. Int'l Corp. v. Am. Cas. Co. of Reading, Pa., 840 F. Supp. 1143, 1152 (W.D. Mich. 1993) (holding that one count in the complaint was excluded from coverage because it "alleged the same omissions in the same proxy literature as had the original complaint filed in the prior policy period.")

     From the face of the pleadings in the two actions, I conclude as a matter of law that the "bad advice" aspect of the Malpractice Action relates back to the Dragonetti Action because they share a common nexus of facts and arose out of the same occurrence of wrongful acts, namely Ettinger's alleged professional misconduct in filing and pursuing the Realtor Action. In the Dragonetti Action complaint, ReMax alleged that Ettinger "not only knew his filings and prosecution of the [Realtor Action] claims were wrongful and malicious under the law, but encouraged and/or permitted his clients to pursue those claims rather than terminating or withdrawing from the action as their counsel, even in the face of being forewarned of the consequences." Def. Ex. II at 45; Def. Ex. I at 4-5, 28. In the Malpractice Action complaint, the Millers allege that they relied on Ettinger's advice in initiating the Realtor Action, and followed

his advice to continue the suit even though ReMax contended that it was frivolous. Def. Ex. I at 27, ¶¶ 7, 9. They allege in Count I of the Malpractice Action that, as a proximate result of Ettinger's professional negligence, they were induced into filing the Realtor Action, incurred legal fees, and were later subjected to the Dragonetti Action. Id. at 29, ¶ 20. I find that these allegations are indistinguishable; thus the bad advice aspect of the Malpractice Action relates back to the Dragonetti Action.

     I reach a different conclusion, however, as to the dual representation aspect of the Malpractice Action (Count II), which is based upon Ettinger's allegedly improper dual representation of himself and the Millers in the Dragonetti Action. Id. at 30-31. Ettinger's dual representation of the Millers and himself in the Dragonetti Action constitutes a distinct negligent act unrelated to his advising the Millers to file the Realtor Action and continuing to prosecute it after being warned it was meritless. The Millers allege in the Malpractice Action that they agreed to the dual representation in reliance on Ettinger's advice that there was no conflict of interest that would prevent him from undertaking the dual representation unless and until the case proceeded to trial. Def. Ex. I at 30. They allege that the dual representation was in plain violation of the law prohibiting attorneys from representing a client if the representation involves a conflict of interest, since Ettinger had personal interests in the outcome of the Dragonetti Action. Id. These allegations are not similar to any allegation contained in the Dragonetti Action.

     I conclude, however, that this is a distinction without any ultimate difference. While this aspect of the Malpractice Action does not relate back to the claims raised in the Dragonetti Action, coverage is still excluded under the Policy's Prior Knowledge Exclusion. Ettinger knew

before the Policy's coverage period began on July 1, 2011, that he had undertaken the dual representation since the Dragonetti Action was filed in August 2009.  As stated above, it is not necessary that Ettinger subjectively knew that his dual representation was a breach of his professional duties; only that a reasonable attorney in Ettinger's position would have had a basis to believe that he had breached a professional duty in undertaking the dual representation.  The facts surrounding Ettinger's role in the Realtor Action, as pled in the subsequent Dragonetti Action, would have given a reasonable attorney in his position the basis to believe that dual representation in the Dragonetti Action of himself and his clients created an improper conflict of interest.  ReMax asserted liability against the Millers based on Ettinger's alleged knowledge that the prosecution of the Realtor Action was wrongful and malicious.  Given that the Dragonetti Action alleged liability against both Ettinger and his clients based on Ettinger's own conduct, a reasonable attorney in his position would have had a basis to believe that dual representation violated Pennsylvania Rule of Professional Conduct 1.7(a)(2) (stating in pertinent part "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer").  Accordingly, there is no coverage under the Policy for this aspect of the Malpractice Action either.

## IV. CONCLUSION

For the reasons stated, the Motion of Defendant Twin City for judgment on the pleadings is granted as to all claims contained in the plaintiffs' complaint.[3]  An appropriate Order follows.

---

[3] Because Twin City had a reasonable basis for denying coverage, the plaintiffs also cannot state a plausible bad faith claim.  See, e.g., Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (noting where a plaintiff cannot demonstrate that denial of coverage was unreasonable, bad faith cannot be established).